FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

2015 MAY 21  A 9: 29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

AUDI OF AMERICA, INC.,
an operating unit of VOLKSWAGEN
GROUP OF AMERICA, INC.,
a New Jersey corporation,

        Plaintiff,

vs.

GARFF-UC, LLC, d/b/a KEN GARFF AUDI,
a Utah limited liability company,

        Defendant.

Case No. 1:15CV644
TSE/MSN

## COMPLAINT

Plaintiff Audi of America, Inc. ("**AoA**"), a division of Volkswagen Group of America, Inc. ("**VWGoA**"), by and through its attorneys, for its complaint against Defendant Garff-UC, LLC d/b/a Ken Garff Audi ("**Garff**" or "**Dealer**"), alleges and states as follows:

### NATURE OF THE DISPUTE

1.    AoA is the distributor of Audi-brand motor vehicles, parts and accessories in the United States. AoA distributes Audi-brand vehicles in the United States through a network of independent, authorized Audi dealers. Garff is an authorized dealer of Audi vehicles, parts, and accessories, and its current approved dealership location is at 195 East University Parkway, Orem, Utah 84058. Upon information and belief, Garff is part of a sophisticated, multi-billion dollar business enterprise—a group of affiliated entities gathered under the umbrella of Garff Enterprises, Inc. ("Garff Enterprises"). Upon information and belief, Garff Enterprises and its affiliated dealer operating entities comprise the third largest privately owned automotive retailer in the country, with 85 franchises in six states.

2.     AoA's claims in this action arise out of Garff's breach of a certain "Audi Exclusive Facility Construction Agreement," which the parties agreed to and accepted in January 2013 (the "**Facility Agreement**" or "**Agreement**").   A copy of the Facility Agreement is attached hereto as **Exhibit A**.

3.     Under the Facility Agreement, Garff agreed to, among other things, construct and occupy a new, exclusive Audi dealership facility, and to adopt the fictitious name (or d/b/a) "Audi Lehi," by December 31, 2014.

4.     AoA provided specific, substantial consideration in return.  At the time the parties entered into the Facility Agreement, Garff's existing (and still current) Audi dealership facility did not meet AoA's published image and operations requirements.  As a result, Garff was ineligible for a type of bonus payment—the "Standards Bonus"—that AoA pays to Audi dealers whose facilities do comply with its requirements.  Nonetheless, under the Facility Agreement, AoA agreed to make Standards Bonus payments to Garff—bonus payments Garff was not otherwise eligible to receive—throughout the two-year period, ending December 31, 2014, during which Garff would plan and construct its new, compliant facility.

5.     In addition, the parties agreed to the specific consequences that would flow from Garff's failure to perform its obligations.  Specifically, the Facility Agreement provides that, "[s]hould Dealer for any reason … fail to perform any of its obligations," it would "lose the right to receive any Standards Bonus and must immediately pay to AoA any Standards Bonus monies paid under this Agreement."

6.     Garff failed to perform its obligations under the Facility Agreement.   Most notably, Garff did not complete construction and occupy the new facility by December 31, 2014, and has refused to adopt the fictitious name "Audi Lehi."

7.      When AoA informed Garff that it intended to exercise its remedies as provided by the Facility Agreement, Garff responded by filing a "Request for Agency Action and for Hearing" (the "**Request**") before the Utah Department of Commerce (the "**UDC**").   In the Request, Garff seeks to nullify AoA's remedies under the Facility Agreement and to prevent AoA from taking any other measures in response to Garff's breaches (the "**Utah Action**").   A copy of the Request is attached hereto as **Exhibit B**.

8.      Moreover, in filing its action before the UDC, Garff violated additional provisions of the Facility Agreement.   First, by seeking relief from the UDC, Garff breached its covenant not to sue AoA regarding its obligation to repay bonus monies under the Facility Agreement. Second, by filing the action in Utah, Garff violated the forum selection clause of the Facility Agreement, pursuant to which the parties agreed to exclusive venue in the state and federal courts having jurisdiction over Fairfax County, Virginia.

9.      Accordingly, by this action, AoA seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that, among other things, (i) each of AoA's remedies under the Facility Agreement, (ii) Garff's agreement and covenant not to sue AoA, and (iii) the parties' agreement to litigate in this forum, are valid and enforceable terms.

10.      AoA also seeks compensatory damages and restitution in an amount to be proved at trial, but (i) not less than $905,589.05, including recovery of the bonus payments made to Garff under the Facility Agreement and as a result of such Agreement, based upon Garff's material and continuing breach of its obligations under the Facility Agreement; and additionally (ii) AoA's attorneys' fees and costs in the Utah Action based upon Garff's material and continuing breach of its agreement and covenant not to sue.

<u>**PARTIES**</u>

11.     VWGoA is a corporation organized under the laws of the State of New Jersey and with its principal place of business in Herndon, Virginia.  As an operating unit of VWGoA, AoA shares its citizenship with VWGoA, and maintains its principal place of business in Herndon, Virginia.  Accordingly, AoA is a citizen of both New Jersey and Virginia, and no other state.

12.     Garff is a limited liability company organized and existing under the laws of the state of Utah, with its principal place of business located in Orem, Utah.  Upon information and belief, each of Garff's members is a citizen of the state of Utah, and no other state.  Accordingly, Garff is a citizen of Utah, and no other State.

<u>**JURISDICTION**</u>

13.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

<u>**VENUE**</u>

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction.  Specifically, the Facility Agreement was negotiated, in part, in this District, AoA performed substantially all of its obligations under the Facility Agreement in this District, and Garff has communicated with AoA personnel residing in this District regarding its failure to perform obligations under the Facility Agreement.  In addition, the Facility Agreement includes a forum selection clause pursuant to which the parties agreed that "[v]enue for any legal proceedings shall be in the state or federal courts having jurisdiction in and over Fairfax County, Commonwealth of Virginia."  *See* Exhibit A at ¶ 5(e).

**FACTUAL BACKGROUND**

**A.     AoA's Bonus Program.**

15.     AoA operates a nationwide dealer incentive program, called the Margin and Bonus Program (the **"Program"**), that provides Audi dealers the ability to obtain several categories of incentive payments, including, among others, (i) a standards bonus (the **"Standards Bonus"**), and (ii) a "Top Performer Bonus" (the **"Top Performer Bonus"**).  The Standards Bonus is paid as a specific percentage of the MSRP of each vehicle sold. The Top Performer Bonus is paid each quarter in a variable dollar amount per qualified vehicle sold.

16.     The Standards Bonus is paid to dealers who comply with AoA's facility and operations requirements, which are published in, among other things, AoA's Dealer Operating Standards (the **"Operating Standards"**).  AoA delivered its 2012 Dealer Operating Standards to all Audi dealers in the United States, including Garff, in September 2011.

17.     To be eligible to receive the Top Performer Bonus, a dealer must first qualify for the Standards Bonus (as well as several other types of bonuses under the Program).  Thus, a dealer that does not qualify for the Standards Bonus will not be eligible to receive the Top Performer Bonus.

**B.     The Facility Agreement.**

18.     By 2012, Garff's Audi dealership facility (which it currently still occupies) failed to meet AoA's facility and operations requirements.  Garff therefore did not qualify to receive the Standards Bonus or, as a result, the Top Performer Bonus.

19.     Garff desired to remain eligible for these bonuses.  Thus, during 2012, AoA and Garff negotiated the terms under which Garff would construct a new facility that complied with

5

the Operating Standards.   While AoA and Garff were working toward an agreement, AoA

maintained Garff's eligibility for the Standards Bonus and Top Performer Bonus.

20.    On January 8, 2013, Garff agreed to and accepted the Facility Agreement.  AoA

executed the Facility Agreement a few days later, on January 16, 2013, at which time the Facility

Agreement became effective.

21.    Paragraph 1 of the Facility Agreement, including subparts, sets forth Garff's

obligations.  It provides, among other things, as follows:

> **Facility Commitment; Construction.**  Dealer will complete construction of an
> Exclusive Audi facility in accordance with all of the architectural details,
> corporate identity elements, colors, furniture, finishes, fixtures, materials, signage,
> operating capacities, and key design elements prescribed by AoA as per its Dealer
> Operating Standards requirements of Exclusive facilities (the "Facility") at the
> Proposed Dealership Premises.

Ex. A, at ¶ 1.

22.    Paragraph 1 of the Facility Agreement established a series of deadlines for Garff's

construction project.   Among others, Paragraph 1(d) required Garff to obtain all necessary

approvals and permits and begin construction of a new dealership facility by December 31, 2013.

Then, under Paragraph 1(e), Garff agreed to both (i) construct a new dealership facility and (ii)

assume the fictitious name (or d/b/a) "Audi Lehi" by December 31, 2014.

23.    Specifically, Paragraph 1(e) provides as follows:

> <u>Construction Completion and Name Change.</u>   Within twelve (12) months of
> satisfying its obligation outlined in Paragraph 1(d), Dealer will complete
> construction of the Facility at the Proposed Dealership Premises and have it ready
> for use, in a manner fully approved by AoA and in accordance with the
> Construction Drawings or revised Construction Drawings approved by AoA.
> Additionally, Dealer will have assumed the fictitious name "Audi Lehi"
> contemporaneous with occupying the Facility at the Proposed Dealership
> Premises[.]  By this date, Dealer will occupy the Facility.

*Id.* at ¶ 1(e).

24.     The consideration that AoA would provide to Garff is set forth in Paragraphs 2 and 3 of the Facility Agreement.

25.     Under Paragraph 2, AoA agreed to continue Garff's eligibility for Standards Bonus payments at its current level as a dealer in a "Brand Dedicated" facility until Garff satisfied its obligation in Paragraph 1(d) (*i.e.*, to obtain approvals and permits and begin construction), or until December 31, 2013, whichever occurred sooner.

26.     Under Paragraph 3, AoA agreed that, upon Garff's satisfaction of its obligations in Paragraph 1(d), but before Garff completed its new, exclusive facility, AoA would make Garff eligible to receive even larger Standards Bonus payments—*i.e.*, those at the level paid to dealers in "Exclusive" facilities.

27.     The Facility Agreement includes the parties' agreement as to the consequences that would flow from Garff's failure to perform its obligations.

28.     Paragraph 3 states that if Garff breaches its obligations to complete construction, occupy the new facility, and assume the fictitious name "Audi Lehi" by December 31, 2014 (or potentially sooner), it loses its eligibility to continue receiving Standards Bonus payments:

> **Standards Bonus Eligibility – Construction.**  . . . If Dealer's obligation specified in Paragraph 1(e) is not satisfied within twelve (12) calendar months of Construction Start, Dealer shall immediately forfeit any Standards Bonus eligibility until such time as it has completed the Facility at the Proposed Dealership Premises.

Ex. A, ¶ 3.

29.     Then, Paragraph 4 of the Facility Agreement sets forth AoA's recovery rights as to Standards Bonus monies it paid to Garff pursuant to the Agreement.  Paragraph 4 also includes Garff's agreement and covenant not to sue AoA relating to AoA's exercise of such recovery rights:

**Repayment and Covenant Not to Sue.** Should Dealer for any reason … fail to perform any of its obligations as set forth above, Dealer will lose the right to receive any Standards Bonus and must immediately repay to AoA any Standards Bonus monies paid under this Agreement. Further, Dealer agrees not to dispute, either in a court of law, arbitration, or before a motor vehicle board, the decision by AoA regarding repayment of Standards Bonus monies. Dealer, by signing this Agreement, agrees and covenants not to sue AoA with respect to any alleged damages Dealer may suffer as a result of Dealer's loss of the right to receive any Standards Bonus or requirement to repay AoA any Standards Bonus monies arising out of Dealer's failure to perform its obligations under this Agreement.

*Id.* at ¶ 4.

30.     Paragraph 5 of the Facility Agreement sets forth several "miscellaneous" provisions that are also relevant to this dispute.

31.     The parties agreed that "time is of the essence for all matters set forth in this Agreement" and specified that "[t]his a material term of this Agreement." *Id.* at ¶ 5(a).

32.     The parties also agreed to the following merger clause:

Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. No representations or statements other than those expressly set forth or referred to in this Agreement were made or relied upon in entering into this Agreement.

*Id.* at ¶ 5(d).

33.     Separately, Paragraph 5(e) of the Agreement provides that Utah law governs disputes under the Facility Agreement, and that the state or federal courts encompassing Fairfax County, Virginia, will be the exclusive venue for such disputes.

34.     Finally, the Facility Agreement makes clear that it was a negotiated, arms-length transaction between sophisticated parties. Paragraph 5(f) states, among other things, that "[b]oth parties have negotiated regarding the terms of this Agreement," while Paragraph 5(h) recites that "[b]oth parties have had legal counsel of their choice review this Agreement and are fully advised as to the legal and binding nature" of it. *Id.* at ¶¶ 5(f), 5(g).

35.     The Facility Agreement was duly executed by authorized representatives of both companies. In particular, John Garff, who is President of Garff and, upon information and belief, the CEO of Garff Enterprises, signed the Facility Agreement on Garff's behalf. Upon further information and belief, Michael Creer, the general counsel of Garff Enterprises, co-signed the Agreement as a witness.

**C.      Garff Failed to Perform Under the Facility Agreement**

36.     AoA complied with its payment obligations under Paragraphs 2 and 3 of the Facility Agreement. AoA had no other material performance obligations under the Facility Agreement.

37.     Garff, however, failed to satisfy certain of its material performance obligations under the Facility Agreement, including its obligation to complete construction of the new facility, occupy the new facility, and assume the fictitious name "Audi Lehi" by or before December 31, 2014.

38.     Although Garff has expressed its intent to eventually complete construction of the new facility, it has repeatedly stated that it refuses to assume, and will not assume, the fictitious name "Audi Lehi," even once the new facility is complete.

39.     In January 2015, AoA notified Garff that it was in breach of the Facility Agreement and ceased making Standards Bonus payments to Garff.

**D.      Garff Filed a Request for Agency Action with the Department.**

40.     On or about February 10, 2015, Garff filed the Request with the UDC seeking, among other things, a hearing before the Utah Motor Vehicle Franchise Advisory Board (the "Board") challenging AoA's rights under the Facility Agreement. In the Request, Garff asserted that AoA's remedies under the Facility Agreement—*i.e.*, the cessation of future Standards Bonus

payments and the recovery of such payments made pursuant to the Agreement—violate the Utah New Vehicle Franchise Act, Utah Code Ann. § 13-14-101 *et seq.* ("Dealer Act").

41.     Garff asked the Board to issue declarations that, among other things, Garff is entitled "to use its existing 'Ken Garff Audi' dba without reprisal, or threat of reprisal, from [AoA]," and that AoA is prohibited from "deny[ing] Garff its Standard[s] Bonus based on project delays." In other words, Garff's Request seeks relief that would permit Garff to retain the benefits it received from AoA under the Facility Agreement despite Garff's failure to perform its obligations under that Agreement.

42.     On April 15, 2015, the Board issued an Order Granting Motion to Dismiss for Lack of Jurisdiction and Improper Venue, holding that "[u]nder Paragraph 5(d) of the [Facility] Agreement, venue is proper in the Commonwealth of Virginia." On or about May 15, 2015, Garff filed an appeal of the Board's decision in Utah state court.

43.     AoA has ceased making Standards Bonus payments to Garff. However, Garff has not performed its obligation to "immediately repay" AoA the "Standards Bonus monies paid under [the] Agreement," *see* Ex. A at ¶ 4, following its failure to perform its obligations as described above.

44.     AoA has not separately made demand for such payment upon Garff because, in light of Garff's filing of the Request and its contention that AoA's recovery rights are null, such demand would be futile.

**COUNT I**
**DECLARATORY JUDGMENT OF AOA'S RIGHTS**
**UNDER THE FACILITY AGREEMENT**

45.     AoA incorporates by reference the allegations of Paragraphs 1-44 as if fully set forth herein.

46.     The Facility Agreement is a valid, binding and enforceable contract between AoA and Garff.

47.     Garff has failed to timely perform its obligations under Paragraph 1(e) of the Facility Agreement, including completion of the required facility and the assumption of the fictitious name "Audi Lehi."

48.     Based on Garff's failure to timely perform its obligations under Paragraph 1(e) of the Facility Agreement, AoA has certain remedies under Paragraphs 3 and 4 of the Agreement.

49.     AoA contends that it may properly exercise its remedies under Paragraphs 3 and 4 of the Facility Agreement.  Garff, on the other hand, denies that AoA may properly exercise its remedies under Paragraphs 3 and 4 of the Agreement.

50.     Garff filed its Request before the UDC and the Board to prevent AoA from, among other things, exercising its remedies under Paragraphs 3 and 4 of the Facility Agreement.

51.     Garff's Request does not prohibit AoA from exercising its remedies under Paragraphs 3 and 4 of the Facility Agreement because, among other things, the UDC and the Board do not have subject matter jurisdiction over the parties' dispute arising out of the Agreement.

52.     Moreover, the UDC and the Board are not the proper venue for the parties' dispute arising out of the Agreement.

53.     There is an actual controversy between the parties regarding whether AoA possesses and may properly exercise its remedies under the Facility Agreement, including by offsetting against Garff's Open Parts Account, based on Garff's failure to construct the facility required by the Facility Agreement.

54.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, AoA seeks a declaration that the Facility Agreement, including the terms specifying AoA's remedies, is valid and enforceable, and that AoA has the right to exercise its recovery rights under the Agreement.

WHEREFORE, AoA respectfully requests that the Court enter judgment in its favor and against Garff granting the following relief to AoA:

     a.    A declaration that the Facility Agreement is a valid and enforceable contract.

     b.    A declaration that AoA may exercise its remedies under the Facility Agreement, including by offsetting against Garff's Open Parts Account, without further notice or process;

     c.    A declaration that the forum selection clause set forth in the Facility Agreement, Ex. A at ¶ 5(e), is a valid and binding provision of the Agreement, and that Garff's filing of the Utah Action was in violation of the forum selection clause;

     d.    A declaration that Garff's agreement and covenant not to sue AoA set forth in the Facility Agreement, *id.* at ¶ 4, is a valid and binding provision of the Agreement, and that Garff's filing of the Utah Action was in violation of its agreement and covenant not to sue AoA;

     e.    An award of costs; and

     f.    An award of such other relief as the Court deems fair and appropriate.

## COUNT II
## BREACH OF CONTRACT

55.    AoA incorporates by reference the allegations of Paragraphs 1-44 as if fully set forth herein.

56.    The Facility Agreement is a valid, binding and enforceable contract between AoA and Garff.

57.     The terms of Paragraphs 3 and 4 of the Facility Agreement—including those specifying AoA's remedies in the event of Garff's failure to perform, and Garff's agreement and covenant not to sue AoA—are valid, binding and enforceable terms of the Agreement.

58.     AoA performed all of its obligations under the Facility Agreement.

59.     Garff failed to perform and breached its obligations under Paragraph 1(e) of the Facility Agreement, *i.e.*, to complete construction and occupy the new facility, and adopt the fictitious name "Audi Lehi," by December 31, 2014.   In addition, Garff has repudiated its obligation under Paragraph 1(e) to adopt the fictitious name "Audi Lehi."

60.     Garff failed to perform and breached its repayment obligations under Paragraph 4 of the Facility Agreement, *i.e.*, to immediately repay to AoA the Standards Bonus monies it received pursuant to the Agreement.

61.     Garff failed to perform and breached its other obligations under Paragraph 4 of the Facility Agreement, *i.e.*, its agreement and covenant not to sue AoA.

62.     AoA has suffered damages as a result of Garff's failure to perform these obligations.

WHEREFORE, AoA respectfully requests that the Court enter judgment in its favor and against Garff granting the following relief to AoA:

a.   Damages arising out of Garff's breaches of the Facility Agreement in amounts to be determined at trial, but not less than (i) $905,589.05 in connection with Garff's failure to perform its obligations under Paragraph 1(e) of the Facility Agreement, and (ii) an additional amount not less than the total amount of the attorneys' fees and costs AoA has incurred and continues to incur in connection with the Utah Action, resulting from Garff's breach of its agreement and covenant not to sue AoA under Paragraph 4 of the Facility Agreement;

      b.  An award of costs; and

      c.  An award of such other relief as the Court deems fair and appropriate.

**COUNT III**
**RESCISSION**

63.     AoA incorporates by reference the allegations of Paragraphs 1-44 as if fully set forth herein.

64.     The Facility Agreement is a valid, binding and enforceable contract between AoA and Garff.

65.     Garff has not performed its obligations under the Facility Agreement, and has repudiated its obligation to adopt the fictitious name "Audi Lehi."

66.     Garff's obligation to complete and occupy the new facility, and adopt the fictitious name "Audi Lehi," by December 31, 2014, was a material term of the Facility Agreement.

67.     As a result of Garff's failure to perform these obligations, AoA has been denied the benefit of its bargain with Garff.

68.     If AoA's remedies under the Facility Agreement are not enforceable (as Garff contends), AoA does not have an adequate remedy at law.  In that event, equity requires that the parties be returned to their respective pre-contract positions.

WHEREFORE, AoA respectfully requests that the Court enter judgment in its favor and against Garff granting the following relief to AoA:

      a.  Rescission of the Facility Agreement;

      b.  An award of $905,589.05 that AoA paid to Garff pursuant to, and/or as a result of, the Facility Agreement;

      c.  An award of costs; and

14

    d.  An award of such other relief as the Court deems fair and equitable.

Dated:  May 19, 2015

Respectfully submitted,

Richard Mark Dare (VSB No. 14146)
Isler Dare PC
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia 22182
T:  (703) 748-2690
F:  (703) 748-2695
mdare@islerdare.com

James R. Vogler (IL Bar No.  2908395)
(application for *pro hac vice* admission
forthcoming)
Owen H. Smith (IL Bar No. 6307554)
(application for *pro hac vice* admission
forthcoming)
Andrew E. Nieland (IL Bar No. 6300425)
(application *for pro hac* vice admission
forthcoming)
BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 West Madison, Suite 3900
Chicago, Illinois 60606
T:  (312) 984-3100
F:  (312) 984-3150

*Attorneys for Plaintiff Audi of America, Inc.*